UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

CANDY MILLER                                                                                    Plaintiff

vs.                                                                   Civil Action No. 1:07cv25

NORTH MISSISSIPPI MEDICAL CLINICS, INC.
and JAIME UNGO, MD                                                                       Defendant

## ORDER

This cause comes before the court on the motion of defendants North Mississippi Medical Clinics, Inc. ("NMMC") and Dr. Jaime Ungo for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff Candy Miller has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that NMMC's motion should be denied and that Dr. Ungo's motion should be granted.

This is a sexual harassment case arising out of plaintiff's former employment at Pulmonary Consultants, a clinic operated by NMMC. Plaintiff is a registered nurse who was first hired by North Mississippi Medical Center, Inc. in October 2000, and she transferred to Pulmonary Consultants in January, 2003. Plaintiff alleges that beginning shortly after her transfer, she began suffering persistent sexual harassment at the hands of Dr. Jaime Ungo, a doctor at the clinic. Plaintiff alleges that, among other things, Dr. Ungo repeatedly asked her to have sex with him and made crude and harassing remarks to her on a regular basis. Plaintiff alleges that this harassment continued until early 2006, when she told co-workers about it. NMMC was informed of the remarks and initiated an investigation.

Plaintiff alleges, and defendant denies, that the NMMC employees tasked to investigate

1

the allegations told plaintiff that she would "have to leave" the clinic if she filed a formal report of harassment against Dr. Ungo. Plaintiff testified that she then indicated that she wished to retract her claims if she was going to lose her job for filing a complaint. Plaintiff did, in fact, sign a statement retracting her claims of harassment against Dr. Ungo. Citing the poisoned work relationship caused by plaintiff's (retracted) claim of harassment, defendant then placed plaintiff on one month's administrative leave and later transferred her to another job within the NMMC system but outside of the Pulmonary Consultants clinic. Feeling aggrieved, plaintiff filed an EEOC claim alleging sexual harassment,[1] and she later filed the instant lawsuit alleging both Title VII claims against NMMC and state law claims against Dr. Ungo. NMMC and Dr. Ungo have each filed motions for summary judgment, arguing that no genuine issue of fact exists regarding any of plaintiff's claims against them.

To state a Title VII hostile work environment claim relating to harassment by either a co-worker or supervisor, a plaintiff must first establish (1) that he or she belongs to a protected class, (2) that he or she was subject to unwelcome harassment, (3) that the harassment was based on the plaintiff's protected characteristic, and (4) that the harassment was so severe or pervasive as to affect a "term, condition or privilege" of employment. *Woods v. Delta Beverage Group.,*

---

[1] Defendant North Mississippi Medical Clinics notes that the EEOC complaint was actually filed against North Mississippi Medical Center, a related but distinct entity, and it seeks dismissal on this basis. This strikes this court as being a hypertechnical and improper ground for summary judgment, particularly considering that defendant was well aware of the EEOC petition in question. Indeed, a September 8, 2006 letter from NMMC Vice President Rodger Brown specifically discusses plaintiff's allegations before the EEOC and makes reference to "North Mississippi Medical Clinics, Inc." not tolerating unlawful sexual harassment. The letter also notes that defendant's HR director Lynn Nelson was present at a meeting to discuss plaintiff's EEOC claims. It is thus apparent that North Mississippi Medical Clinics, Inc. was fully aware of plaintiff's complaint before the EEOC.

*Inc.*, 274 F.3d 295 (5th Cir. 2001) (*citing Shepherd v. Comptroller of Public Accounts of the State of Texas*, 168 F.3d 871, 873 (5th Cir. 1999).

In seeking summary judgment, defendant initially argues that the alleged harassment by Dr. Ungo was not sufficiently "severe or pervasive" to alter the terms or conditions of plaintiff's employment. The court does not agree. Plaintiff testified in her deposition that she suffered the following harassment at the hands of Dr. Ungo beginning soon after her transfer to Pulmonary Consultants in 2003:

> Q: What did he do?
> A: He made comments.
> Q: Like what?
> A: Some of the comments he would make were, like, we need to have sex now before we start sagging and we look like Dr. Moore and Mary.
> Q: He said this to you as soon as you started working?
> A: Within a few months. That was just one - - that's one of numerous comments made.
> . . .
> Q: He just said this out of the blue?
> A: As far as I can remember. We were maybe standing there talking and, you know, we need to get together before we start sagging. When's your belly button going to meet my belly button. Comments like that. If I could dip you in chocolate I'd lick you all over. Oh, what I would do to you if I could get you alone. Comments such like that.
> Q: Do you remember when he made that comment?
> A: No. Because this went over - went on for three and a half years. These comments went on over that amount of time.
> Q: The same comments - -
> A: And usually they were the same comments.
> Q: You mentioned three of the comments. Were there any other comments?
> A: Uh-huh (indicating yes).
> Q: Tell me some of the other comments.
> A: He would use hand gestures and say his penis was this big (indicating). And I would just look at him and say, okay, and roll my eyes and walk on. Or if you - later on when we were towards the back of the clinic, the printer was on my side and then his computer was over here (indicating). If I ever reached for anything, like if I ever brushed his leg or anything, he'd say, oh, that was a close one. You almost touched it. Referring to his penis. He would talk about his son's penis and

> say, you know, the mothers on the soccer field, you know, couldn't believe my
> son's penis was that big and I'd - - that's my boy. Those are just a few of many,
> many comments.
> Q: But you don't remember any specific -
> A: No.
> Q: - dates or times.
> A: I remember a specific date where he told me and it was - I believe it was May
> the 4th. He had told me that if I needed money for my house that I was buying at
> that particular time - I had signed a contract on a home. He told me he would help
> me financially with just minimal strings attached. And that was on the stairwell
> on three east.

In the court's view, the above testimony suffices to establish genuine fact issues regarding whether plaintiff suffered "severe or pervasive" harassment at the hands of Dr. Ungo. The Fifth Circuit has observed that "[h]arassment need not be severe and pervasive to impose liability; one or the other will do," *see Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 435 (5th Cir. 2005), and it seems clear that the alleged harassment in this case was, at the very least, pervasive, given the lengthy time period involved.

Having concluded that plaintiff has established genuine fact issues regarding whether she suffered actionable sexual harassment at the hands of Dr. Ungo, the court must now decide whether defendant may be held liable for it. The resolution of this issue is complicated by the fact that it is not clear whether Dr. Ungo should be considered plaintiff's supervisor or a mere co-worker under Fifth Circuit precedent. Indeed, it is not even clear what Fifth Circuit law in the present context might be. The parties cite no authority on this issue, and a recent Fifth Circuit decision merely notes the differing approach of two different circuits on this issue without indicating which approach might be applicable in this circuit. *See McCullough v. Kirkum*, 212 Fed.Appx. 281, 283 n. 5 (5th Cir. 2006), *citing Parkins v. Civ. Constr. of Ill.*, 163 F.3d 1027, 1034 (7th Cir. 1998) (holding that individual is considered a supervisor if he has "the authority to

affect the terms and conditions of the victim's employment") and *Mack v. Otis Elevator Co.*, 326 F.3d 116, 126-27 (2d Cir. 2003) (rejecting *Parkins'* test and holding that individual may be considered a supervisor if he has authority to direct employee's day-to-day work activities).

The issue of whether Dr. Ungo was plaintiff's supervisor is an important one, inasmuch as it dictates whether plaintiff will be required to prove negligence on the part of defendant in responding to the complaint of harassment in this case or whether she will be entitled to proceed under the less stringent (for the plaintiff) *Faragher-Ellerth* approach applicable to claims of harassment by supervisors. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 780, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) and *Burlington Industries v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Under the *Faragher-Ellerth* approach, assuming that no tangible employment action is established, the defendant has the burden of proving both that it acted reasonably in preventing and responding to any sexual harassment and that the plaintiff "unreasonably" failed to follow reporting procedures which were available to her.

It is difficult for this court to analyze this issue when the governing legal standard is unclear, but it does seem clear that plaintiff has the burden of proving that Dr. Ungo was her supervisor under whatever definition of "supervisor" might be applicable. *See Mack*, 326 F.3d at 122. It is further clear that plaintiff has failed to offer proof and/or arguments which might allow this court to resolve this issue in her favor. Indeed, plaintiff appears to tacitly concede that Dr. Ungo was not her supervisor, stating that "(t)he significant question is not whether Defendant Ungo was Mrs. Miller's supervisor but whether he had apparent authority given to him by Defendant Clinics and our society as a whole?" Clearly, the issue of "apparent authority" provided by "society" is not the "significant question" in the *Faragher-Ellerth* context. For its

part, defendant does offer substantial arguments and proof on this issue, noting that

> First of all, Defendant Ungo was not Plaintiff's supervisor. (Exh. A, pp. 31, 36, 137; Exh. C, pp. 18-20) This is an undisputed fact. Plaintiff admitted in her deposition that the Office Manager, Dee Dee Bates was her supervisor and the person to whom she would turn about personnel matters, as well as the person that would come to her if there was an issue with her work performance. (Exh. A, pp. 16-18) The only oversight that Defendant Ungo gave was in patient care. (Exh. C, pp. 18-20).

Based on the foregoing, the court concludes that Dr. Ungo was not plaintiff's supervisor and that plaintiff therefore has the burden of proving negligence on the part of defendant in responding to the alleged harassment in this case.

The Fifth Circuit has held that, in considering whether an employer responded negligently to reports of sexual harassment by a co-worker of the plaintiff, the court considers whether the employer knew or should have known about the harassment and whether it failed to take prompt remedial action. *Woods v. Delta Beverage Group., Inc.*, 274 F.3d 295, 298-99 (5th Cir. 2001) (*citing Shepherd v. Comptroller of Public Accounts of the State of Texas*, 168 F.3d 871, 873 (5th Cir. 1999). The Fifth Circuit has held that a Title VII employer has actual knowledge of harassment that is known to "higher management," and it has constructive knowledge "if through the exercise of reasonable care it should have known what was going on." *Sharp v. City of Houston*, 164 F.3d 923, 929-30 (5th Cir. 1999). The Fifth Circuit indicated in *Sharp* that the term "higher management" refers to those with "remedial power" or authority to address a problem. *Id.* at 930. As discussed below, the evidence indicates that Human Resources director Lynn Nelson learned of statements made by plaintiff alleging sexual harassment, and Ms. Nelson clearly qualifies as "higher management" within the meaning of Fifth Circuit precedent.

In light of the foregoing, it is apparent that the issue of whether defendant responded

6

reasonably to reports of harassment by Dr. Ungo is a crucial one in this case, and, in the court's view, plaintiff's deposition testimony serves to establish genuine fact issues in this regard. Defendant concedes that it learned of informal accusations of sexual harassment being levied against Dr. Ungo by plaintiff in May, 2006. At this time, plaintiff informally complained to Regina Shoemaker, a fellow employee at Pulmonary Consultants, that she was seeking another job because "after 2 years it was getting old for her doctor to ask her to sleep with her." Shoemaker reported this comment to Dr. Stewart, a physician at the clinic, who then relayed it to human resources personnel. Human Resources director Lynn Nelson learned of the allegations and instructed plaintiff's supervisor Dee Dee Bates and another employer named Ellen Roberts to investigate these allegations on behalf of defendant.

Ms. Bates and Ms. Roberts confronted plaintiff regarding these allegations in a May 4, 2006 meeting, and, in the court's view, plaintiff's case relies largely upon her description of the statements made by Bates and Roberts during that meeting. Plaintiff testified that she was told in the meeting with Bates and Roberts that, if she filed a formal complaint against Dr. Ungo then she would "have to leave" her job. Specifically, plaintiff testified that:

> Q: Isn't it true that you were not happy that Dr. Stewart went and reported what you said?
> A: I was more scared than not happy because when I asked her about the formal complaint, she told me that I needed to file a formal complaint and I asked her, I said, if I file a formal complaint, what will happen? She said, well, you'll have to leave. And I had just bought a home and I had to have a job.
> Q: She said, if you file a formal complaint, you will have to - -
> A: You will have to leave Pulmonary. So knowing that I had just put a contract on a home, I had to have a job and I told both of them, I said, well, then I choose not to file a formal complaint.

Plaintiff further testified that she retracted her informal statements regarding harassment after being

7

warned that she would lose her job if she filed a formal complaint:

> Q: In this conference with Ms. Bates and Ms. Roberts, you told them you were just joking when you made that comment didn't you?
> A: Because - I told them I was just joking after they told me that if I didn't file a - if I filed a formal complaint, I would have to leave. So I told Ms. Bates, well, then I was just joking. Then she told me after that, she said, well you need to go to Dr. Stewart and Regina and apologize to them for making that comment, which I did later that day at her and Ellen - at their request. I went and apologized to Dr. Stewart and I said, I'm sorry I made that comment. I was just joking, I was near tears when I said that to him because I didn't want to lose my job because I had just applied for a loan and gotten this house. So therefore, if I lose my job, I can't pay for my house.

It is thus clear from the record that plaintiff declined to make a formal complaint of harassment, and plaintiff even went so far as to sign a statement prepared by defendant which indicated that she had been "joking" and further denying that she had been coerced into signing the statement. The issue for the court's resolution is the legal effect to be given to plaintiff's actions in this regard.

It should initially be noted that the Fifth Circuit has held that a generalized fear of adverse consequences is an insufficient reason for a plaintiff to fail to report sexual harassment in the related *Faragher/Ellerth* supervisor harassment analysis. *See Snapp v. Ruan Transport Corp.*, 2006 WL 2455922 (N.D. Miss. 2006), *citing Harper v. City of Jackson Municipal School Dist.*, 149 Fed. Appx. 295, 301 (5th Cir. 2005). In *Harper*, the Fifth Circuit held that a plaintiff's "explanation that she was too intimidated to report the sexual harassment is insufficient to show that her failure to complain and cooperate were reasonable." In so concluding, the Fifth Circuit approvingly quoted from a prior district court opinion that:

> All harassment victims risk retaliation when they complain. For Title VII to be properly facilitated, the reasons for not complaining about harassment should be substantial and based upon objective evidence that some significant retaliation will take place.

*Harper*, 149 Fed.Appx. at 301, *citing Young v. R.R. Morrison and Son, Inc.*, 159 F.Supp.2d 921

(N.D. Miss. 2000). This authority arose, to reiterate, in the related *Faragher/Ellerth* supervisor harassment context, and it is unclear to this court to what extent this authority would be followed in the co-worker harassment context. The court will assume, however, that the Fifth Circuit would deem this case law to at least be persuasive authority in the co-worker harassment context.

This case is distinguishable from *Snapp* and *Harper* since, if plaintiff's testimony is to be believed, she was directly informed by her supervisor and another employee, both of whom were acting on behalf of the human resources director, that she would lose her job if she filed a formal complaint against Dr. Ungo. In the court's view, being so informed would clearly constitute "objective evidence that some significant retaliation will take place" within the meaning of *Harper* so as to render plaintiff's failure to file a formal complaint "reasonable." At her deposition, counsel for defendant questioned plaintiff's testimony, arguing that it would not be rational for defendant to initiate an investigation of harassment only to warn plaintiff that she would have to leave her current job if she filed a formal complaint. Nevertheless, plaintiff stood by her testimony in this regard:

> Q: Why would they come to you to file a complaint and then tell you, but if you do, you're going to have to move to a different - -
> A: I don't know why they would tell me that. They told me I would have to leave as in I would be fired, gone. That's the way I took it. So I told her, I said, well, if I'm going to be fired, I'm not filing a formal complaint.
> Q: They used the term fired? You would be fired?
> A: She told me I would have to leave Pulmonary Consultants. That's her exact words. You will have to leave Pulmonary Consultants.

Bates and Roberts dispute that they ever told plaintiff that she would lose her job if she filed a complaint, and defendant notes that plaintiff had attempted to obtain transfers to other jobs in the past. Defendant thus questions the veracity of plaintiff's testimony that she refused to file a formal report out of fear of losing her job. Nevertheless, it is apparent that the issue of plaintiff's credibility

9

is one for the jury, and the court is simply unable to make such credibility determinations against plaintiff in the summary judgment context.

This court has previously observed that Fifth Circuit sexual harassment law is quite stringent for the plaintiff, *see Brockington v. Circus Circus Mississippi, Inc.*, 2008 WL 2079130 (N.D. Miss. 2008) and this applies equally to standards for reporting sexual harassment. In *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 412 (5th Cir. 2002), for example, the plaintiff reported her supervisor's harassment to his supervisor, who dealt ineffectively with the harassment and subsequently began harassing the plaintiff himself. The Fifth Circuit held that it was unreasonable for the plaintiff not to report the harassment to another person listed in the defendant's reporting policy once her initial complaint was obviously ineffective. *Id.* at 413.

In light of *Wyatt*, it is certainly possible that the Fifth Circuit will disagree with this court and conclude that plaintiff should have persevered beyond her initial disappointing meeting with Bates and Robert and filed a formal complaint of harassment. Regardless, this court's task is simply to conclude whether genuine fact issues exist regarding whether defendant responded with reasonable care to the information it obtained regarding possible sexual harassment. Plaintiff repeatedly testified that she was threatened with loss of her job if she filed a complaint of harassment, and this court is required by law to accept her testimony as true in the summary judgment context. The court can not discern how an employer might be deemed to have responded with reasonable care to reports of harassment if the two employees which it tasked with dealing with the matter allegedly informed plaintiff that she would lose her job if she filed a formal complaint. The court can likewise not fathom that employers would, in effect, be given a "free pass" to have supervisors threaten complaining employees with losing their job if they file a complaint of harassment, under the theory

that the plaintiff still has other reporting avenues open to her. Such a result would clearly be in conflict with the policy considerations supporting Title VII.

It is certainly arguable that Miller has a rather weak case of harassment in light of having signed a statement denying that she was harassed and further denying that she had been coerced into signing the statement. It may prove difficult for plaintiff to explain having signed this statement to a jury's satisfaction, and it is likewise not clear to what extent plaintiff will be able to establish recoverable damages resulting from any harassment. Regardless, the court is, at the summary judgment stage, required to interpret the facts in the light most favorable to plaintiff, and, having done so, it concludes that genuine fact issues exist regarding whether plaintiff suffered "severe or pervasive" harassment in this case and whether defendant used reasonable care in responding to it. Defendant NMMC's motion for summary judgment is therefore due to be denied.

The court also has before it a motion for summary judgment filed by Dr. Ungo individually as to the state law claims of malicious interference with employment relations asserted against him. This is, in the court's view, a garden variety case of sexual harassment, and there exists no individual liability for such harassment under Title VII. While there may be certain exceptional cases where individual liability would exist under state law for sexually harassing conduct, the court sees no indication that the Mississippi Supreme Court or the Fifth Circuit intend to impose widespread liability under state law in cases such as the present one. Dr. Ungo's motion for summary judgment will therefore be granted.

It is therefore ordered that defendant NMMC's motion for summary judgment [59-1] is denied and Dr. Ungo's motion for summary judgment [57-1] is granted. Defendant has filed an appeal of the Magistrate Judge's March 17, 2006 ruling denying defendant's motion to compel, but

the court concludes that this ruling should not be reversed. Defendant's appeal [61-1] of that ruling will therefore be denied. The motions in limine filed by Dr. Ungo [69-1] are hereby dismissed as moot in light of his dismissal from this lawsuit.

SO ORDERED, this the 30th day of June, 2008.

/s/ MICHAEL P. MILLS
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**